I concur in the opinion of Mr. Justice Chapman as to the quashing of the order of August 18, 1948, but dissent to the act of this Court under the circumstances of this case in directing that the case be sent to a court of law for trial where the plaintiff will be compelled to assume the burden of recovering property which he has been in possession of for thirty-five years. When one has come home and found that some one has taken possession of his property which he has occupied for thirty-five years, he ought to be heard rather than sent elsewhere.
Furthermore, the burden of proof should be placed upon the petitioners, and they should not be allowed to gain an advantage by their forcible invasion. Again, if the plaintiff is to be sent to a court of law, I doubt that we have authority to tell him what kind of suit he must bring. The Court's opinion directs that it should be in "ejectment."
The Chancellor, on June 18, 1948, decreed:
"2. Defendants' motions to dismiss, transfer or award jury trial be and they are hereby held in abeyance at this time."
But thereafter, on August 18, 1948, did decree:
"This cause coming on to be heard the 5th day of August, 1948, upon defendants' motions to dismiss, transfer or award jury trial, and it appearing to the Court that such motions are entirely without merit, it is thereupon
"Ordered, Adjudged and Decreed that defendants' motions to dismiss, transfer or award jury trial be and they are hereby denied."
We deem that the petition for certiorari is addressed to this latter order, since the only "questions" stated in petitioners' brief are as follows:
"(A) First Question — In a suit in equity to quiet title to land, where defendants are in actual possession of the land involved in such suit, do not the defendants who had made timelydemand for a jury trial have a statutory right thereto? (Italics supplied). *Page 221 
"(B) — Second Question — In a suit in equity to quiet title to land where defendants are in actual possession of the land involved in such suit, and plaintiff has not alleged any special equities, do not the defendants have a constitutional right to ajury trial under Section 3 of the Declaration of Rights in the Florida Constitution?" (Italics supplied).
The prime question before us on the petition for certiorari is whether the Chancellor erred in foreclosing a jury trial, which ruling was predicated upon the pleadings before the taking of testimony.
The defendants-petitioners-Coxes are in possession of the lands in dispute and have filed a "motion to dismiss, transfer or award jury trial." The Chancellor entered an order denying petitioners' motion and referred the case to a Special Master to take testimony. The Master was not authorized by the Chancellor to make finding of fact.
In addition to an answer, the Coxes also filed a counterclaim simply reaffirming all the matters in their answer and prayed that the court decree "the true boundary line between the properties of these defendants and the plaintiff is controlled by and set forth in the description contained in the deed of these defendants dated November 7, 1942, * * *"; that their title be quieted as against the claims of plaintiff and that the plaintiff be enjoined from trespass thereon. To the foregoing counterclaim plaintiff filed his reply.
It seems that in 1913 he acquired title to a certain tract of land and thereafter, in 1914, conveyed a portion of it to R.T. Leavengood, through whom the defendants-petitioners claim title; that in May, 1927, a plat was filed by some one indicating (it seems) that the north ten feet of the defendants Coxes' property was apart of the street on the north side of the lot.
The defendants-petitioners claim ownership to: "The W. 37 1/2' of the East 75' of the N. 123' and the W. 11' of the E. 86' of the N. 110' of Lot 3, Block 2 of Whitesburg Subdivision,otherwise described as the N. 123' of the W. 37 1/2' of the E. 75' of Lot 29 of Hendry Knights Map of Spanish Park, as per map or plat thereof recorded among the Public Records of said County in Plat Book 2, page 5." (Italics supplied).
And state that they or "their predecessors in title have been in possession of all, or substantially all, of the property thus described for a period of seven years," etc. (Italics supplied).
The foregoing description identified the property according to the plats of Whitesburg Subdivision and of Spanish Park.
According to Exhibit "A" of plaintiff-respondent's bill the two descriptions, one as per plat of Whitesburg Subdivision and the other as per plat of Spanish Park, are not the same portion of the earth's surface, i.e., the north line of the property according to the plat of Whitesburg Subdivision is ten feet south of the north line of the property, as per the Spanish Park plat, and this ten feet between the two north lines is occupied as a street.
The defendants seem to have recently moved over and taken possession of property on the south side, which would compensate for the 10-foot strip used for street purposes on the north.
The allegations as to possession by the plaintiff are that he or his predecessors in title have been in exclusive possession of this "south 10 feet" since 1913. This is countered by like allegations as to the property claimed by the defendants, qualified by an allegation that they have been in possession of "substantially all" of the above described property for more than seven years. It would seem that the word "substantially" may have been used because of the fact that the defendant has only recently taken possession of land which had previously been held by the plaintiff and is now in controversy.
This Court on the subject has held: "Treating of the subject of boundaries, Mr. Justice Story in his Commentaries, says, `whatever may have been the origin of this branch of jurisdiction, it is one which has been watched with a good deal of jealousy by Courts of Equity of late years; and there seems to be no inclination to favor it, unless special grounds are laid to sustain it. The general rule now *Page 222 
adopted, is not to entertain jurisdiction in cases of confusion of boundaries, upon the ground that the boundaries are in controversy, but to require that there should be some equity superinduced by the act of the parties, such as some particular circumstances of fraud, or some confusion where one has ploughed too near another, or some gross negligence, omission or misconduct on the part of persons whose special duty it is to preserve or perpetuate the boundaries.' 1 Story's Com., Sec. 615." Doggett v. Hart et al., 5 Fla. 215, 232, 58 Am.Dec. 464. See also 2 Story's Equity Jurisprudence, Sec. 835, to the same effect.
Whether the possession of the petitioners entitled them to a jury trial is a matter which cannot at this time be determined from the pleadings. A possession acquired wrongfully and by force may not be such possession as would entitle the petitioners as of right to a jury trial, whereas quiet possession, acquired without force, or trespass would, under some circumstances. Whatever may be the rights of the petitioners to a jury trial depends upon the facts and circumstances as they may be established. Whether the jury trial if awarded shall be upon a "feigned issue", see 18 Am.Jur., "Equity," Sec. 399, p. 272, or as in ejectment or forcible entry or otherwise may depend upon the findings of fact, from the evidence, by the Chancellor.
As to jury trials in equity, American Jurisprudence states: "The practice of submitting the issues to a court of law still prevails in some jurisdictions, although in many cases the courts in these jurisdictions have sustained less formal procedure. An early writer on chancery practice stated that even at that date (1871) the practice had grown up that whenever any relief or remedy within the jurisdiction of the court of chancery was sought in any cause or matter, and whether the title to such relief or remedy was or was not inconsistent with, or dependent upon, a legal right, every question of law or fact cognizable in a court of common law on the determination of which the title to such relief or remedy depends was to be determined by or before the court of chancery with or without a special or common jury. Where the cause could be more conveniently tried by a court of common law, the court might direct an issue whereby any such question might be so tried." 19 Am.Jur., "Equity," Sec. 399, p. 273.
After the taking of evidence the Chancellor will be advised as to whether he should proceed as in Ashurst v. McKenzie et al.,92 Ala. 484, 9 So. 262, award a jury trial in equity, proceed to final decree, or otherwise, according to the facts established.
If a jury trial is not to be had in equity, then it might be appropriate for the Chancellor to grant an interlocutory mandatory injunction whereby the plaintiff's possession would be restored and thereafter allow the defendants time within which to commence a suit at law for the possession of the property in dispute, in which suit at law they would procure the jury trial. After the termination of the suit at law the equity suit could then proceed to final decree, being guided by the judgment at law. Such proceedings were directed in Ashurst v. McKenzie, supra.
It appears that the Chancellor erred in foreclosing the defendants' right to trial by jury, and the question of such right should have been held in abeyance to be thereafter determined in accordance with the facts established by the evidence *Page 223